IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRESTMARK, a division of METABANK,
NATIONAL ASSOCIATION,

        Plaintiff,

  v.

SILVER BIRCH SYSTEMS LLC; and DANIEL T.
OSHATZ, individually.

        Defendants.

**Case No.**

**COMPLAINT**

_____

Plaintiff CRESTMARK, a division of METABANK, NATIONAL ASSOCIATION ("Lender"), through their undersigned counsel, for its Complaint against Defendants SILVER BIRCH SYSTEMS LLC ("Borrower") and DANIEL T. OSHATZ ("Guarantor," together with Borrower, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1. In this action, Lender seeks to enforce its rights and remedies with respect to (a) a business loan made to Borrower with outstanding principal balances totaling $6,328,240.01; and (b) a guaranty issued in favor of Lender, whereby each of the Defendants unconditionally guaranteed and promised to pay promptly all indebtedness due and owing under certain commercial loan agreements entered between Lender and Borrower and Guarantor (Guarantor and Borrower will be collectively referred to as the "Loan Parties").

## SUBJECT MATTER JURISDICTION AND VENUE

2. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because the action is civil in nature, Lender is a citizen of a different nation than

Defendants, and the amount in controversy exceeds the jurisdictional minimum of $75,000.00, exclusive of interest and costs.

3. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this District and in the State of Michigan. Additionally, Borrower and Guarantor consent to venue in this District pursuant to the Loan Documents (as defined below).

**PARTIES**

4. Lender is a national banking association domiciled in, and a citizen of, South Dakota. Lender's main office, as identified in its Articles of Association, is located in the City of Sioux Falls, County of Minnehaha and State of South Dakota.

5. Borrower is a limited liability company with its principal place of business believed to be located in Phoenix, Arizona.[1]  Guarantor owns one hundred percent (100%) of the ownership interests in Borrower.  Guarantor, as noted below, is a citizen of New York State.  For purposes of jurisdiction, Borrower is domiciled in, and a citizen of, New York.

6. Guarantor is an individual domiciled in, and a citizen of, New York.

**BACKGROUND**

**I.   Lender Advanced Loans to Borrower.**

7. On or about September 13, 2021, Lender extended Borrower a line of credit loan up to $10,000,000.00 (the "Loan"). Amounts to be advanced under the Loan were to be a percentage of accounts receivable due from Borrower's customers (which are defined, *inter alia*, in the Loan Agreement as "Account Debtors").

---

[1]   Borrower has provided Lender with two different business addresses located in Phoenix, Arizona.  On information and belief, Borrower does not operate or own or lease office space at either address.

8.  The Loan is evidenced, in part, by that certain Loan and Security Agreement, dated September 13, 2021 (the "<u>Loan Agreement</u>"), entered between Lender and Loan Parties, as amended, modified and restated from time to time, and that certain Promissory Note, dated September 13, 2021 ("<u>Note</u>"), between Lender and Borrower. A true and correct copy of the Loan Agreement is attached hereto and incorporated herein as **Exhibit A**. A true and correct copy of the Note is attached hereto and incorporated herein as **Exhibit B**. The Loan Agreement, Note and all the instruments, agreements and documents related thereto shall be collectively referred to as the "<u>Loan Documents</u>."

9.  To induce Lender to extend the Loans, Guarantor individually, independently and unconditionally guaranteed all obligations and liabilities due and owing by Borrower to Lender pursuant to the Loan Documents, by executing that certain Personal Guaranty ("<u>Guaranty</u>"), dated September 13, 2021, in favor of Lender. A true and correct copy of the Guaranty is attached hereto and incorporated herein as **Exhibit C**.

10. Pursuant to the Guaranty, Guarantor guaranteed the "full, prompt and unconditional payment when due of all existing and future obligations and indebtedness of[] Borrower to [Lender] including, but not limited to the Indebtedness[.]" Guaranty at § 1.

**II. <u>Loan Parties Granted Lender a Security Interest in Certain Assets</u>**

11. In order to secure their obligations and liabilities to Lender, Loan Parties granted Lender:

> a security interest in all of its assets, now existing or hereinafter arising, wherever located, including all Accounts, Goods, Inventory, Equipment, Chattel Paper, Instruments, Investment Property, specifically identified Commercial Tort Claims, Documents, Deposit Accounts, Letter of Credit Rights, General Intangibles, Contract Rights, customer lists, furniture and fixtures, books and records and supporting obligations for any of the foregoing ("Collateral"), and all proceeds of the foregoing, to secure repayment of the Obligations.

Loan Agreement, § 8(A).[2]

12. On September 13, 2021, Lender perfected its security interest in the Collateral by duly filing a UCC-1 financing statement with the Arizona Secretary of State as File No. 202100467237, as amended, renewed or supplemented. A true and correct copy of the UCC-1 Filing is attached hereto and incorporated herein as **Exhibit D**.

### III. Loan Parties Commit Numerous Defaults Under the Loan Documents

13. Pursuant to Sections 2(C)(i) and (iv) of the Loan Agreement, "Borrower must repay all Advances with respect to the Loans with interest, which is due monthly as specified in the Note, along with all other fees and expenses of [Lender] set forth [in the Loan Agreement] or in the Schedule."

14. Additionally, "Borrower must pay interest on the principal amount which is outstanding each month in arrears . . . until the Indebtedness is fully paid." Note.

15. To facilitate payment on the Loan, the Loan Agreement requires Borrower to establish a Lockbox Account (as defined in the Loan Agreement), into which Borrower is required to direct all proceeds due from any of Borrower's Account Debtors. Loan Agreement § 5.

16. Teleescrow, Inc. ("Teleescrow") holds the Lockbox Account. The funds held in the Lockbox Account are to be remitted to Lender for payment of the Loan.

17. From September through November 2021, Borrower and Teleescrow timely transferred funds from the Lockbox Account to Lender for payment of the Loan. However,

---

[2] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Loan Documents.

4

beginning in December 2021, Teleescrow paid Lender in smaller amounts and less frequently.

18. As of December 25, 2021, Teleescrow and Borrower completely ceased all payments to Lender, notwithstanding that Teleescrow continues to collect and hold payments from Borrower's Account Debtors.

19. The Lockbox Account constitutes an "account" and "asset" of Borrower, and is therefore included in the Collateral. Moreover, the proceeds received into the Lockbox Account, constitute an "asset" of Borrower.

20. Pursuant to the Loan Agreement, Lender "may in its sole discretion collect any Obligations due [Lender] by (i) directly applying funds in the Lockbox Account . . . to the Obligations[.]" Loan Agreement § 2(C).

21. Additionally, Section 8(C)(ii) of the Loan Agreement imposes the duty on Borrower to "cooperate with [Lender] in obtaining control of any Collateral in the possession of third persons[.]"

22. Despite demand, Borrower has failed to cooperate with Lender in obtaining control of the Collateral in the Lockbox Account in Teleescrow's possession.

23. Pursuant to the Loan Agreement, each month Borrower is obligated to:

> deliver to [Lender] management prepared financial statements, balance sheets, and profit and loss statements for the month then ended . . . [m]onthly detailed Accounts Receivable Aging Reports no later than 15 days after the end of each month [and m]onthly Accounts Payable Aging Reports no later than 15 days after the end of each month.

Loan Agreement, Schedule § 13.

24. Borrower failed to provide prepared financial statements, balance sheets, and profit and loss statements for the months of September 2021, October 2021 and November 2021, as well as the aging reports as required by the Loan Agreement.

25. Additionally, pursuant to Section 10(O)(iii) of the Loan Agreement, Borrower agreed that "all of Borrower's Inventory and Equipment . . . shall remain free from all liens, claims, encumbrances, and security interests[.]"

26. Beginning in or around December 2021, Borrower granted at least three blanket liens on the Collateral, evidenced by UCC statement number 2022-000-1183-5) (December 21, 2021), UCC statement number 2021-007-0010-6 (December 31, 2021) and UCC statement number 2022-000-1545-7(January 6, 2022 ) (collectively, "Subsequent UCC Filings"). True and correct copies of the Subsequent UCC Filings are attached hereto as **Exhibit E**.

27. "Borrower must comply with its representations, promises, covenants and reporting requirements set forth in [the Loan Agreement], in the Schedule and in the other Loan Documents . . . Borrower's failure to do [so] is a default[.]" Loan Agreement § 2(D).

28. Each of the foregoing acts and omissions by Borrower constitute a Default under the Loan Agreement.

### IV. Lender Accelerated the Total Indebtedness and Provided Ample Notice and Opportunity to Cure

29. On January 12, 2022, based on Borrower's Defaults and after ongoing communications with Loan Parties, Lender sent Loan Parties a Notice of Default and Demand ("Demand"), notifying Loan Parties of the Defaults and demanding that Loan Parties, *inter alia*, remit full payment of the Loan and all other amounts owed under the Loan Documents by January 18, 2022. A true and correct copy of the Demand is attached hereto as **Exhibit F**.

30. Pursuant to the Note, the Loan is due and owing "ON DEMAND." Note (emphasis original).

31. Additionally, pursuant to the Guaranty, Guarantor "absolutely, irrevocably and unconditionally" guaranteed payment of all amounts owed by Borrower "on demand." Guaranty § 1.

32. Despite demand, Loan Parties have failed and refused to pay the amounts due and owing under the Loan Documents.

33. Upon the occurrence of a Default or if Borrower fails to pay the Obligations on demand, under the terms of the Loan Documents, Lender may, inter alia: 1) charge interest at the Extra Rate (Loan Agreement § 14; Note); and 2) require Borrower to gather up the Collateral and make it available to Lender for Lender to conduct UCC foreclosure sales (Loan Agreement § 14).

## COUNT I
## BREACH OF CONTRACT – LOAN AGREEMENT
(BORROWER)

34. Lender restates and incorporates paragraphs 1 through 33 as if fully set forth herein.

35. For good and sufficient consideration, Lender and Borrower entered into the Loan Agreement, pursuant to which Lender provided the Loan to Borrower.

36. Lender has performed any and all conditions and obligations required of it under the Loan Documents.

37. Borrower breached its contractual obligations by virtue of:

    a. failing to deliver to Lender monthly management-prepared financial statements, balance sheets, and profit and loss statements, for the months of September 30, 2021, October 31, 2021, and November 30, 2021, as required under Section 13 of the Schedule to the Loan Agreement;

7

    b.    failing to deliver to Lender updated accounts receivables aging and accounts payable aging reports, as required under Section 13 of the Schedule to the Loan Agreement;

    c.    failing to keep the Inventory free from all liens, claims, encumbrances, and security interests, as required pursuant to Section 10(O)(ii) of the Loan Agreement;

    d.    failing to cooperate with Lender in obtaining control of its Collateral in the possession of Teleescrow, as required under Section 8(C)(ii) and 9(F) of the Loan Agreement;

    e.    failing to: (i) cooperate with Lender to enable Lender's collection of funds from the Lockbox Account, and/or (ii) directly pay amounts outstanding on the Loans, as required under Sections 2(C)(i) and (iv) of the Loan Agreement; and

    f.    failing to pay outstanding amounts when due pursuant to Section 2(C) of the Loan Agreement.

38.    Pursuant to the Loan Agreement, Borrower is obligated to pay Lender's attorney's fees and cost incurred in enforcing its rights under the Loan Agreement. Loan Agreement §§ 2(A)-(B), 4.

39.    As a result of Borrower's breach, Lender has suffered damages in the amount of the no less than $6,328,240.01 under the Loans, plus Extra Rate interest, reasonable costs and expenses, including attorneys' fees, in attempting to collect payment.

### COUNT II
### BREACH OF CONTRACT – NOTE
(BORROWER)

40.    Lender restates and incorporates paragraphs 1 through 39 as if fully set forth herein.

41.    For good and sufficient consideration, Lender and Borrower entered into the Note, pursuant to which Lender provided the Loan to Borrower.

42. Lender has performed any and all conditions and obligations required of it under the Loan Documents.

43. Borrower breached its contractual obligations by failing to pay outstanding amounts "ON DEMAND." Note (emphasis original).

44. Pursuant to the Note which references the Loan Agreement for additional terms, Borrower is obligated to pay Lender's attorney's fees and cost incurred in enforcing its rights under the Note.

45. As a result of Borrower's breach, Lender has suffered damages in the amount of the no less than $6,328,240.01 under the Loans, plus Extra Rate interest, reasonable costs and expenses, including attorneys' fees, in attempting to collect payment.

## COUNT III
## BREACH OF CONTRACT – GUARANTY
(GUARANTOR)

46. Lender restates and incorporates paragraphs 1 through 45 as if fully set forth herein.

47. For good and sufficient consideration, Guarantor, individually, independently and unconditionally issued the Guaranty in favor of Lender. Guaranty § 1.

48. Lender has performed any and all conditions and obligations required of it under the Guaranty.

49. Lender has made demand upon Guarantor to satisfy his obligations under the Guaranty. *See generally* Demand.

50. Guarantor has materially breached his obligations under the Guaranty by failing to pay to Lender the outstanding amounts due and owing pursuant to the Loan Documents and the Guaranty.

51. As a result of Guarantor's breach, Lender has suffered damages in the amount of the no less than $6,328,240.01 under the Loans, plus Extra Rate interest, reasonable costs and expenses, including attorneys' fees, in attempting to collect payment.

**WHEREFORE**, Plaintiff, CRESTMARK, a division of METABANK, NATIONAL ASSOCIATION, respectfully requests this Court to:

    a. enter judgment in favor of Lender and against Borrower and Guarantor, jointly and severally, for no less than $6,328,240.01 under the Loans, plus Extra Rate interest, reasonable costs and expenses, including attorneys' fees, in attempting to collect payment;

    b. appoint a Receiver to take possession of the Collateral; and

    c. grant Lender such other and further relief as the Court may deem just and appropriate.

DATED:  January 14, 2022

                                                           */s/ Lauren J. Caisman*
                                                           One of the Attorneys for Plaintiff

Jason J. DeJonker (*pro hac to be filed*)
Lauren J. Caisman (IL Bar No. 6312465)
Demetria L. Hamilton (*pro hac to be filed*)
Timothy Bow (*pro hac to be filed*)
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Tel: 312-602-5000
Lauren.Caisman@bclplaw.com
Jason.DeJonker@bclplaw.com
Demetria.Hamilton@bclplaw.com
Timothy.Bow@bclplaw.com