UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRESTMARK, a division of
METABANK NATIONAL
ASSOCIATION

        Plaintiff,

vs.

SILVER BIRCH SYSTEMS LLC,
*et al.*,

        Defendants.
_____/

Civil Action No. 22-cv-10092
HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER GRANTING PLAINTIFF/COUNTER-DEFENDANT CRESTMARK'S MOTION TO DISMISS THE COUNTER-COMPLAINT**

I.    Introduction

Crestmark, a division of Metabank National Association, commenced this diversity breach of contract action against Silver Birch Systems, LLC and its chief executive officer, Daniel T. Oshatz, after they allegedly defaulted on their obligations under a series of loan documents. Both Silver Birch and Oshatz (collectively, "Silver Birch") answered the complaint and filed their own counter-complaint asserting causes of action for breach of contract and fraud in the inducement.

Before the Court is Crestmark's motion to dismiss the counter-complaint. (ECF No. 40). Silver Birch responded. (ECF No. 50). Crestmark filed a reply. (ECF No. 52). The Court will decide the motion without oral argument pursuant to E.D. Mich. LR 7.1(f)(2). For the following reasons, the Court shall grant the motion.

II. Background

   A.   *Factual History*

Silver Birch claims to be a global telecommunications provider that purchases "customer access minutes" and sells them to "major overseas telephone companies." (ECF No. 34, PageID.849-50, ¶¶ 2, 7, 9-10). In September 2021, Silver Birch executed both a loan agreement and a promissory note with Crestmark to obtain a $10 million line of credit. (ECF No. 1, PageID.2-3, ¶¶ 7-8). Oshatz personally guaranteed Silver Birch's "obligations and liabilities" under both the loan agreement and the note. (*Id.*, PageID.3, ¶ 9). The loan agreement, the note, and Oshatz's guarantee comprise, what the parties call, the "Loan Documents." The parties structured the transaction so that Silver Birch would receive loan advancements corresponding to a percentage of its accounts receivable. (*Id.*, PageID.2, ¶ 7).

The Loan Documents required Silver Birch to repay the principal, along with interest, to Crestmark in monthly installments. (*Id.*, PageID.4, ¶¶ 13-14). Silver Birch agreed to establish a lockbox account with a third-party escrow agent, where it was supposed to deposit all its customer receipts. (*Id.*, ¶ 15). The escrow agent

2

would then remit the lockbox proceeds to Crestmark as repayment on the loan. (*Id.*, ¶ 16). Crestmark retained Teleescrow, Inc. to perform this function. (*Id.*).

The deal did not take long to unravel. Crestmark maintains that, at first, Teleescrow disbursed a sufficient amount of money from the lockbox account to cover Silver Birch's monthly payments. (*Id.*, PageID.4-5, ¶17). By December 2021, though, Teleescrow disbursed a smaller amount of funds than Crestmark anticipated. (*Id.*). And by the end of that month, it stopped making disbursements to Crestmark altogether. (*Id.*, PageID.5, ¶ 18). Crestmark claims that, despite its contractual obligations, Silver Birch refused to cooperate "in obtaining control of the Collateral in the Lockbox Account in Teleescrow's possession"[1] (*Id.*, ¶ 22); it failed to provide Crestmark with copies of its financial statements (*Id.*, PageID.6, ¶ 24); and it impermissibly "granted at least three blanket liens" on the company's assets to other creditors. (*Id.*, ¶ 26).

Crestmark provided Silver Birch with a notice of default on January 12, 2022. (*Id.*, ¶ 29; ECF No. 1-1, PageID.39-43). The notice demanded full payment of the

---

[1] Crestmark sued Teleescrow to recover the lockbox proceeds in the United States District Court for the Southern District of New York. (SDNY Case No. 22-cv-00385, ECF No. 1). That litigation concluded after Teleescrow's chief executive officer, Eillien Cabrera De Landestoy, executed a confession of judgment under New York law in the approximate amount of $6.16 million. (*Id.*, ECF No. 41-1, PageID.1-4). The Clerk of the Court for the Southern District of New York entered judgment accordingly. (*Id.*, ECF No. 44, PageID.1).

loan and "all other amounts owed under the Loan Documents" by January 18, 2022. (*Id.*; ECF No. 1-1, PageID.42). Silver Birch never complied. (*Id.*, ¶ 32).

### B. Procedural History

Crestmark filed this lawsuit on January 14, 2022, alleging that Silver Birch breached the Loan Documents. (ECF No. 1, PageID.7-10, ¶¶ 34-51). At the same time, Crestmark moved to place Silver Birch into a receivership. (ECF No. 5). The Court granted that motion and has since expanded the receivership to cover Teleescrow, as well as other non-parties. (ECF Nos. 39, 78).

Silver Birch responded with an amended answer and its own counter-complaint for breach of contract and fraud in the inducement. (ECF No. 34, PageID.849-61). Silver Birch's narrative is straightforward: Crestmark manufactured the conditions that led to Silver Birch's default. According to Silver Birch, "Crestmark's own escrow agent [Teleescrow] is holding the funds that Crestmark claims are past due and is ultimately the reason for the payment delay . . . so that [Crestmark] can sue for collection, appoint a receiver, and obtain all of Silver Birch's assets."[2] (*Id.*, PageID.854-55, ¶¶ 37, 41). Crestmark now moves to dismiss the counter-complaint in its entirety. (ECF No. 40).

---

[2] Silver Birch's theory that Teleescrow is somehow beholden to Crestmark appears to be inaccurate. On the contrary, the appointed receiver uncovered documentary evidence indicating that Teleescrow is affiliated *with Silver Birch* – Jonathan Deutsch, Silver Birch's account clerk, apparently doubles as a Teleescrow employee. (ECF No. 58-6, PageID.1118).

III. <u>Legal Standards</u>

When reviewing a motion to dismiss a counter-complaint for failing to state a claim, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (cleaned up); *see also* Fed. R. Civ. P. 12(b)(6). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead sufficient factual matter to render the legal claim plausible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quotation omitted).

IV. <u>Analysis</u>

    A. *Breach of Contract (Counterclaim I)*

Silver Birch contends that Crestmark breached the Loan Documents by failing to direct Teleescrow to release the funds Silver Birch deposited into the lockbox account. (ECF No. 34, PageID.858, ¶¶ 56-59; ECF No. 50, PageID.935-36).

A party asserting a breach of contract under Michigan law must establish (1) that a contract exists, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages because of the breach. *Doe v. Henry Ford Health Sys.*, 308 Mich. App. 592, 601 (2014). "The rights and duties of the parties to a contract are derived from the terms of the agreement." *Wilkie v Auto-Owners Ins. Co.*, 469 Mich. 41, 62 (2003). Courts will enforce "only those

5

obligations actually assented to by the parties." *Id.* at 63. The parties to an agreement cannot be bound to "an obligation not covered by the contract as written." *Id.* at 63 (cleaned up).

Silver Birch's contractual claim falters on several grounds. *First*, the counter-complaint fails to identify any provision in the Loan Documents (1) requiring Crestmark to refund the money deposited in the lockbox to Silver Birch, or (2) assigning ownership of those funds to Silver Birch. *See Univ. Pediatricians v. Wilson*, No. 353462, 2021 Mich. App. LEXIS 5499, at *12 (Mich. Ct. App. Sep. 16, 2021) (affirming dismissal of breach of contract claim where plaintiff failed to identify any contractual provision that defendant violated); *Colombo v. Moore*, No. 297085, 2011 Mich. App. LEXIS 1186, at *6 (Mich. Ct. App. Jun. 28, 2011) (same).

*Second*, Silver Birch admits that Teleescrow (not Crestmark) is the entity that controls the lockbox proceeds. (ECF No. 34, PageID.854-55, ¶¶ 37-40). And it is Teleescrow (not Crestmark) who withheld payment of that money to Crestmark. (*Id.*; PageID.858, ¶¶ 56-57).

*Lastly*, Silver Birch acknowledges that Crestmark lacks the requisite control to direct Teleescrow to surrender the lockbox proceeds because Silver Birch's own allegations confirm that Crestmark sued Teleescrow in federal district in New York to recover those very same funds. (*Id.*, PageID.854-55, ¶ 37).

All these pitfalls lead to one inescapable conclusion: Silver Birch fails to plausibly allege the existence of a contractual provision that Crestmark somehow violated.

## B.   *Fraud in the Inducement (Counterclaim II)*

Silver Birch next alleges that Crestmark lied about lending money to Silver Birch with the "intention of supporting Silver Birch's business endeavors." (ECF No. 34, PageID.859, ¶ 67).

A party alleging fraud in federal court "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  Although Michigan law supplies the substantive elements, Silver Birch must satisfy this heightened pleading requirement to proceed with its fraud in the inducement counterclaim. *See Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001).  To comply with Rule 9(b), a plaintiff must at a minimum "allege the time, place and contents of the misrepresentations upon which they relied." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008). "Vague allegations of generic misrepresentations or omissions" are insufficient to withstand Rule 12(b)(6) dismissal. *William Beaumont Hosp. Sys. v. Morgan Stanley & Co., LLC*, 677 F. App'x 979, 983 (6th Cir. 2017).

Silver Birch asserts that:

> 66.   Crestmark made representations to Silver Birch about being a quality lender who's [*sic*] main objective was to help Silver Birch's business and even went through the process of conducting due diligence.

7

> 67. Crestmark had no intention of supporting Silver Birch's business endeavors.
>
> 68. Crestmark made representations to Silver Birch about the lending relationship in order to induce Daniel Oshatz on behalf of Silver Birch to sign all of the lending documents.
>
> (. . .)
>
> 71. In following the predatory model, Crestmark's true intention was to run to the Court with a manufactured breach in order to get a receiver appointed and seize Silver Birch's assets.
>
> 72. Due to Crestmark's actions, a significant portion of Silver Birch's monetary assets are held up in a Lockbox with Teleescrow and are currently frozen due to a court order in the New York Case.

(ECF No. 34, PageID.859-60, ¶¶ 66-72).

None of these allegations are particularized enough to plausibly establish Silver Birch's entitlement to relief. The counter-complaint fails to plead when the purported misrepresentations occurred, where they occurred, and the actual contents of the misrepresentations that induced Silver Birch to execute the Loan Documents. Nor does Silver Birch explain how Crestmark's unspecified representations about their lending relationship resulted in "a significant portion of Silver Birch's monetary assets" being "held up in a Lockbox with Teleescrow." (*Id.*, ¶¶ 68, 72).

Even placing aside Rule 9(b)'s more exacting pleading standard, Silver Birch cannot prevail on the fraud in the inducement counterclaim. Fraud in the inducement requires a showing that:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*Custom Data Solutions, Inc. v. Preferred Capital, Inc.*, 274 Mich. App. 239, 243 (2006). The material misrepresentation must concern some "future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Id.* at 242-43; *see also Samuel D. Begola Servs. v. Wild Brothers*, 210 Mich. App. 636, 639-40 (1995).

The counter-complaint falls short of plausibly alleging that Crestmark made a false representation, *i.e.*, fraud in the inducement's second element. Beyond alluding generally to communications about their "lending relationship," Silver Birch never identifies the material assurance of future performance that Crestmark left unfulfilled. And by all accounts, Crestmark advanced Silver Birch the $10 million line of credit as promised. (ECF No. 34, PageID.853, 858-59, ¶¶ 27, 62-63, 69).

Because Silver Birch does not point to an assurance that Crestmark failed to perform, it cannot plausibly establish the falsity prong or any of the remaining elements of fraud in the inducement that hinge upon the existence of a false representation. The fraud in the inducement counterclaim is, therefore, dismissed. Accordingly,

IT IS ORDERED that Crestmark's motion to dismiss the counter-complaint (ECF No. 40) is granted.

Dated: July 28, 2022
      Detroit, Michigan

s/Bernard A. Friedman
Bernard A. Friedman
Senior United States District Judge