**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PATHWARD, NATIONAL
ASSOCIATION

        Plaintiff,

v.

SILVER BIRCH SYSTEMS LLC; and
DANIEL T. OSHATZ, individually.

        Defendants.

_____/

Case No. 22-CV-10092- BAF-APP

Hon. Mark A. Goldsmith

**RECEIVER'S MOTION TO RE-OPEN CASE, TERMINATE**
**RECEIVERSHIP, AND DISCHARGE RECEIVER**

Scott Eisenberg (the "Receiver"), by his counsel Schafer and Weiner, PLLC,

for his *Motion to Re-Open Case, Terminate Receivership, and Discharge Receiver*

(the "Motion") states:

**FACTUAL BACKGROUND**

***The Inception of the Receivership***

1.     On January 14, 2022, Crestmark Bank, n/k/a Pathward ("Pathward"),

filed this lawsuit against Silver Birch Systems, Inc. ("Silver Birch").  Pathward

alleged that it had a security interest in all of Silver Birch's assets.  It further alleged

that Silver Birch had made a number of misrepresentations to Pathward related to its

{01134983.1}           1

business and Pathward's collateral and that Silver Birch was in default under its loan documents with Pathward. Pathward sought the appointment of a receiver over Silver Birch. See DN 5.

2. On March 22, 2022, the Court entered its *Order Appointing Receiver* (the "Receiver Order") appointing Scott Eisenberg as Receiver over the business and assets of Silver Birch Systems LLC ("Silver Birch"). The Receiver Order created a receivership estate (the "Receivership Estate") over Silver Birch and its assets. See DN 39.

3. Through his subsequent investigation into Silver Birch and its affairs, the Receiver uncovered significant fraud that included not only Silver Birch, but related entities Teleescrow, Inc. ("Teleescrow"), NYLA Productions, LLC ("NYLA").

4. On July 6, 2022, the Court entered its *Amended Order Appointing Receiver* (the "Amended Receiver Order", and together with the Receiver Order, the "Receiver Orders"). The Amended Receiver Order expanded the Receivership Estate to include Teleescrow, NYLA, and their assets. See DN 78. (Silver Birch, NYLA, and Teleescrow will be collectively referred to as the "Receivership Entities".)

### The Receiver's Efforts to Obtain Information and Assets

5. Pathward had performed an investigation into the assets and liabilities

of Silver Birch and Teleescrow before this Court appointed the Receiver.  The Receiver initially obtained documents related to the Receivership Entities from Pathward and reviewed the documents Pathward provided.

6.    The Receiver subsequently began his own investigation to attempt to marshal any assets which belonged to the Receivership Entities.  The Receiver repeatedly requested the business records of each of the Receivership Entities from the individuals who the Receiver believes controlled them, including Louis Arriola, Jack Layton, Daniel Oshatz, and Jonathan Deutsch (the "Agents").

7.    The Receiver requested, and then demanded, the business records of the Receivership Entitites from the Agents several times.  The Receiver provided each of the Agents with copies of the Receiver Order, which entitles the Receiver to these documents.  See DN 58, 78, 83, and 117.

8.    The Receiver also attempted to take the depositions of each of the Agents, primarily to seek the location of the business records and assets of the Receivership Entities.  The Agents who appeared for their scheduled depositions responded to questions about the existence and location of business records and assets by refusing to answer based on the Fifth Amendment.  See, e.g., Transcript, Exhibit 1.

9.      Ultimately, the Agents claimed that they did not have most of the documents the Receiver requested.  Many of the documents the Agents did provide appear to be fraudulent or, at the very least, unreliable.[1]

10.     As a result, the Receiver took a number of additional actions to attempt to locate the business records and assets of the Receivership Entities.

11.     The Receiver served Google LLC with a subpoena on January 31, 2024. The subpoena requested correspondence related to several Gmail accounts associated with the Agents.

12.     After several months of negotiations, the Receiver and Google LLC reached agreement on a stipulated order governing the production of the requested documents.  The Receiver filed a motion requesting that this Court enter the Order. This Court granted the motion and entered the Order.  See DN 149.

13.     Google LLC produced the e-mails associated with the Gmail accounts in accordance with the Order.  The e-mails did not, however, provide significant information related to collectable assets of the Receivership Entities.

---

[1] For example, the financial statements produced to the Receiver, which purported to be drafted by an independent accounting firm, were not drafted by the firm as indicated by the letterhead at the top of the financial statements.  See Affidavit, Exhibit 2.

{01134983.1}                                          4

14.     The Receiver subpoenaed several financial institutions to attempt to obtain information about the Receivership Entities.  The Receiver subpoenaed Bank of America (twice), DealDefenders, LLC (twice), Delta Bridge Funding, LLC, Metropolitan Commercial Bank (twice), and Continental Bank Utah.[2]

15.     The Receiver also received records related to the Receivership Entities through the Alterna Litigation (defined below).

16.     Ultimately, despite the refusal of the Agents to cooperate in the Receiver's investigation, the Receiver reviewed several thousand pages of documents related to the assets and liabilities of the Receivership Entities, including correspondence, bank statements, contracts, financial statements, tax returns, and various reports.

17.     The Receiver also interviewed several people with knowledge of the Receivership Entities and their financial activities.  These individuals included Eillien Lorena Cabrera DeLandestoy[3], who was involved in the operations of Teleescrow, and the Administrators of Internet Mobile Communications, Ltd., a company now in insolvency proceedings to which a significant portion of the cash in Silver Birch had been transferred.  The Receiver also spoke with the

---

[2] The Receiver subpoenaed some of these entities in this case, and others in the Alterna Litigation (defined below).

[3] Ms. DeLandestoy is known by several names, but this appears to be most commonly used.  The interview with Ms. DeLandestoy is subject to a non-disclosure agreement.

representatives of several of Silver Birch's/Teleescrow's lenders, and with others investigating Silver Birch and Teleescrow.

18. Despite his best efforts to obtain information, the Receiver does not have full knowledge of the assets and liabilities of the Receivership Entities because of the Agents' complete lack of cooperation. However, the Receiver can make conclusions based on the substantial information he has obtained through his investigation, even though the information on which these conclusions are based is incomplete.

19. Based on the information to which he has access, the Receiver has concluded that the only assets of value that the Receivership Entities currently possess are causes of action based on alleged fraudulent transfers of its cash and alleged breaches of fiduciary duties by the Agents (the "Causes of Action"). The Receiver has concluded that the Receivership Entities do not currently possess any tangible assets.

### *The Causes of Action*

20. Many of the Causes of Action are causes of action the Receiver would be required to bring against individuals or entities from which the Receiver anticipates that collection would be difficult and expensive, and possibly fruitless.

21. For example, the Receivership Estates have Causes of Action against the Agents. The Receiver has concluded after his investigation, however, that the

Agents are unlikely to be collectable, and that bringing causes of action against them is a waste of the limited resources of the Receivership Estate.[4]

22.     Similarly, the Receivership Estates appear to have Causes of Action against Internet Mobile Communications, Ltd. ("IMC") to avoid fraudulent transfers.  IMC is in insolvency proceedings.  Most of IMC's assets appear to have disappeared.  See Affidavit, Exhibit 3.

23.     The Receiver nevertheless, through his counsel, sent demand letters to several individuals and entities in an effort to economically bring assets into the Receivership Estate.

24.     Unfortunately, the demand letters did not result in the recovery of assets.  Most of the demand letters were ignored.  The entities which did respond all denied liability.

25.     The Receivership Estate did not have any funds to pursue all of the Causes of Action.  As a result, the Receiver made the decision to only pursue Causes of Action likely to bring assets into the Receivership Estate.

26.     After extensive analysis, the Receiver decided to use the limited resources of the Receivership Estate to pursue Causes of Action against Alterna

---

[4] For example, the Receiver obtained information suggesting that Louis Arriola is uncollectable.  The Receiver has been unable to serve Jack Layton, who supposedly resides in Canada, with process.  Both Mr. Arriola and Mr. Layton use several different names, complicating efforts to locate and serve them.

Capital Solutions, LLC ("Alterna").  The Receiver chose to bring Causes of Action against Alterna because Alterna appeared likely to be collectible, the Receiver believed the Causes of Action had merit, and the Causes of Action had an alleged value of an amount large enough to make pursuit potentially economical.

27.     The Receiver did not have sufficient funds in the Receivership Estate to pursue litigation against Alterna.  As a result, in order to pursue the Alterna Litigation, the Receiver borrowed funds from both Pathward and from Bloom Ventures I, LLC, a litigation funding company.  See *Motion to Approve Financing Arrangements with Pathward National Association and Bloom Ventures I, LLC*, DN 126, and this Court's Order granting the Motion, DN 130.

### *The Alterna Litigation*

28.     On July 27, 2022, the Receiver filed a Complaint against Alterna.  The Complaint alleged the Receivership Entities had transferred $3.1 million to Alterna. The Complaint further alleged that the transfers were fraudulent transfers and voidable as a result, and sought the return of the transferred funds.  See Case No. 22-11744 (the "Alterna Litigation"), DN 1.

29.     The Receiver and Alterna thoroughly litigated the Alterna Litigation, engaging in extensive motion practice and discovery for approximately 2.5 years.[5]

---

[5] For a more detailed description of the Alterna Litigation, please see the *Receiver's Motion to Approve Settlement Agreement with Alterna Capital Solutions, LLC*, DN 154.

30.     On February 3, 2025, after the summary judgment motions and responses had been filed, the parties participated in a mediation.  Former Bankruptcy Judge Philip Shefferly was the mediator.

31.     The mediation started at 9:30 in the morning and lasted until approximately 8:30 that night.  At the end of the mediation, the parties reached a settlement in principle, conditioned on this Court's approval (the "Conditional Settlement").

32.     On April 3, 2025, the Receiver filed his *Motion to Approve Settlement Agreement with Alterna Capital Solutions, LLC* ("Settlement Motion"), requesting that this Court approve the Conditional Settlement.  See DN 154.  No party objected to the Settlement Motion.  This Court entered an Order which granted the Settlement Motion and approved the Conditional Settlement on May 19, 2025.  See Order, DN 159.

### *Distribution of Proceeds of Settlement*

33.     The settlement with Alterna brought in $1,450,000 to the Receivership Estate (the "Settlement Proceeds").  In accordance with the Receiver's Settlement Motion and this Court's Order, the Settlement Proceeds were distributed as follows:

**CRS Capstone Partners, LLC** - $24,500 (Payment of past due professional fees)

**Schafer and Weiner, PLLC** - $295,000 (Payment of past due professional fees)

**Franklin Capital Advisors, LLC** - $69,000 (Payment of past due professional fees)

**Bloom Ventures 1, LLC** - $640,000 (Repayment of Litigation Funding Loan to Receivership Estate)

**Pathward, National Association** - $390,000 (Repayment of Loans to Receivership Estate)

<u>**Funds Remaining in the Receivership Estate After Distributions**</u> - $31,500

Total = $1,450,000

<u>See</u> Order, DN 159.

34.     In short, the Receiver used the Settlement Proceeds to pay past due the professional fees and to repay loans made to the Receivership Estate both prior to and in relation to the Alterna Litigation.

### *Administrative Closing of Case*

35.     On July 21, 2025, this Court entered an Order Closing Case.  This Court stated:

> It appearing that the purposes of the receivership have now been accomplished, the Court closes this case, subject to reopening to enforce prior orders, protect or secure any asset or interest of the receivership, or for other good cause.

<u>See</u> DN 160.

### *Request To Re-Open Case To Terminate Receivership*

36.     As explained in more detail below, the Receiver has taken the steps necessary to investigate and pursue the assets of the Receivership Estate to the extent that is economically prudent to do so.   The Receiver believes in his business judgment that additional pursuit of assets is not economical and would not benefit the Receivership Estate.   As this Court has noted, the purposes of the receivership have been accomplished.   As a result, the Receiver now requests that this Court re-open this case in order to terminate the Receivership Estate and discharge the Receiver.

## LEGAL ANALYSIS

### I.     THE RECEIVERSHIP ESTATE SHOULD BE TERMINATED.

37.     In a receivership proceeding, the district court has broad powers and wide discretion in crafting relief.   *United States v. Capital Across Am., L.P.*, 369 F. App'x 674, 678 (6th Cir. 2010) (analyzing district court's approval of claims process and denial of claim).   The decision whether to terminate a receivership is a matter within the district court's discretion.   *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995); *also see generally* Fletcher Cyclopedia of the Law of Corporations § 7770 ("The power to terminate a receivership is a necessary incident of the power to appoint, and whether a particular receiver should be removed is ordinarily largely in the discretion of the court").

38.     A judge who has found it necessary to appoint a receiver should see that the receivership is liquidated as economically and speedily as possible, unless its continuance is demonstrably beneficial to creditors. *Jones v. Proctorville*, 290 F.2d 49, 50 (6th Cir. 1961).

39.     While the decision on whether to terminate a receivership turns on the facts and circumstances of each case, it is generally held that a receivership should be dismissed when the reason for the receivership ceases to exist. *Baliga v. Link Motion, No. 18cv11642 (VM) (DF)*, 2022 U.S. Dist. LEXIS 43104, at *47-48 (S.D.N.Y. Mar. 9, 2022) (citing various sources); see also *FTC v. Mobe Ltd., No. 6:18-cv-862-RBD-DCI*, 2024 U.S. Dist. LEXIS 102807, at *16-17 (M.D. Fla. June 10, 2024) (generally speaking, a receivership should be terminated as soon as it has accomplished its purpose, and as such, whenever the reason or necessity for the receiver ceases to exist, the receiver should be discharged upon proper application).

40.     In this case, Pathward moved for the Receiver to be appointed based on various defaults and evidence that the Agents and the Receivership Entities were engaged in fraud and had dissipated Pathward's collateral.  See Emergency Motion to Appoint Receiver, DN 5.  This Court appointed the Receiver to take charge of, preserve, and liquidate whatever assets of the Receivership Entities existed for the

benefit of its creditors.  See, e.g., Amended Order Appointing Receiver, DN 78, p 2, paragraph (C) (stating that a receiver is necessary to preserve and protect Pathward's collateral and to prevent to the extent possible the collateral from being dissipated).

41.    The Receiver has investigated the assets and liabilities of the Receivership Entities.  As set forth above, the Receiver obtained, reviewed, and analyzed thousands of pages of documents, interviewed persons with knowledge, and took the depositions of the Agents.  The Receiver also reviewed the results of Pathward's investigation into the Receivership Entities, and obtained knowledge related to the Receivership Entities through the Alterna Litigation.

42.    The Receiver has also, to the extent that it is economically feasible to do so, marshalled the assets of the Receivership Entities to pay their obligations. After analyzing the potential assets of the Receivership Entities, the Receiver focused on the Alterna Litigation based on his judgment that pursuit of those Causes of Action had the best chance of bringing value to the Receivership Estate.  The Receiver successfully brought sufficient funds into the Receivership Estate to repay past due loans and professional fees of the Receivership Estate, in addition to the loans and professional fees necessary to prosecute the Alterna Litigation.

43.    After investigation and review, the Receiver does not believe that pursuit of additional Causes of Action or other assets is economical, because the Receiver believes that the cost to obtain those assets would be greater than the

{01134983.1}                                          13

benefit to the Receivership Estate from liquidating the assets which could be obtained.

44.     In short, the Receiver has extensively investigated the assets and liabilities of the Receivership Estate, marshalled and liquidated the assets which it made economic sense to pursue, and distributed the proceeds in accordance with the priority of parties-in-interest and this Court's orders.

45.     As this Court has concluded, the purposes of the receivership have been accomplished.  The Receiver therefore requests that this Court enter an Order terminating the receivership and the Receivership Estate.  See Proposed Order (the "Proposed Order") attached as Exhibit 4, see also *Baliga*, supra; *FTC v. Mobe Ltd.*, supra.

## II.     THE REMAINING MONEY IN THE RECEIVERSHIP ESTATE SHOULD BE USED TO PAY PATHWARD.

46.     As set forth above, the Receiver distributed the Settlement Proceeds in accordance with this Court's Order.  See Order, DN 159.  Also in accordance with this Court's Order, $31,500 of the Settlement Proceeds were reserved to pay the professional fees necessary to close the Receivership Estate and to address any remaining issues related to the Receivership Estate.  The Receivership Estate has no additional money or property.

47.   Since filing the Settlement Motion, the Receiver and the professionals the Receiver has retained (the Receiver's "Professionals") have incurred fees addressing the few remaining issues related to the Receivership Estate.  Professional fees and costs have also been necessary related to this Motion and the issues addressed herein.

48.   Nevertheless, the Receiver anticipates that a small amount of funds will remain in the Receivership Estate after the payment of the professional fees necessary to terminate the receivership.

49.   The Receivership Estate borrowed money from Pathward in order to permit the Receiver to administer the Receivership Estate.  See, e.g., DN 55, 68. These loans have not been repaid in full.  See, e.g., DN 154, paragraph 16.

50.   The Receiver requests that this Court enter an Order which permits the Receiver to use any funds remaining in the Receivership Estate after the payment of the professional fees and costs necessary to terminate receivership to pay amounts due under Pathward's first secured lien in the assets of the Receivership Estate and/or to repay remaining amounts due under the loans Pathward has made to the Receivership Estate.  See Proposed Order, Exhibit 4.

### III.   THE RECEIVER SHOULD NOT BE REQUIRED TO FILE TAX RETURNS FOR THE RECEIVERSHIP ENTITIES.

51.   The Amended Receiver Order states that the Receiver is authorized, **but not obligated**, to, "pay all taxes, prepare, file, and distribute any tax returns,

forms, or other documents that may be necessary". Amended Receiver Order, DN 78, p 7, paragraph 5(xxii).

52. The Agents provided the Receiver with financial statements for Silver Birch which purported to be prepared by an accounting firm (the "Zubero Firm"). However, the Zubero Firm did not actually prepare the financial statements the Agents provided. The Agents appear to have stolen the Zubero Firm's letterhead and faked the financial statements. See Exhibit 2.

53. The Receiver has reviewed the financial statements and compared them to bank records in his possession. The financial statements do not accurately reflect the financial condition or activities of Silver Birch.

54. The Agents provided the Receiver with tax returns for Silver Birch for the years 2019 and 2020. The Receiver is not certain these tax returns were actually filed with the Internal Revenue Service ("IRS"). It appears unlikely that the tax returns accurately reflect the financial condition of Silver Birch.

55. On February 26, 2024, the Receiver filed a Form 4506 with the Internal Revenue Service ("IRS") requesting true copies of Silver Birch's 1120 tax returns for the years 2019 and 2020. See Form 4506, Exhibit 5. On or about May 2, 2024, the IRS responded stating that it could not provide the requested documents. See IRS Response, Exhibit 6.

56.     The Receiver subsequently sent the IRS a second, modified Form 4506, again requesting the tax returns.  The IRS again declined to provide any documents to the Receiver, and refunded the check the Receiver had sent with the modified Form 4506.

57.     The Agents never provided the Receiver with financial statements or tax returns for Teleescrow or NYLA.

58.     The Receiver has carefully reviewed the other financial documents the Agents provided to him. These documents appear to contain significant inaccuracies, because they contradict bank statements of the Receivership Entities.

59.     In sum, the Receiver does not have access to complete and/or accurate financial information for the Receivership Entities.  The Receiver does not have this information primarily because the Agents have failed, and in many cases refused, to provide it.  See, e.g., Exhibits 1 and 6.

60.     The only income the Receiver has brought into the Receivership Estate are the Settlement Proceeds.  Alterna's payment of the Settlement Proceeds to the Receivership Estate, and how the Receiver distributed the Settlement Proceeds, are publicly known facts to which the Agents have access.  See, e.g., DN 154 and 159.

61.     The Receiver Orders do not require the Receiver to prepare tax returns. Under the circumstances of this case, where the Agents, and not the Receiver, have access to the information necessary to file complete and accurate tax returns, the Agents, and not the Receiver, should be responsible for doing so.

62.     The Receiver requests that this Court enter an Order stating that the Receiver is not required to file tax returns for any of the Receivership Entities, and that filing tax returns for the Receivership Entities is the sole responsibility of the Agents.  See Proposed Order, Exhibit 4.

**IV.     THE RECEIVER SHOULD BE PERMITTED, BUT NOT REQUIRED, TO PRESERVE THE DOCUMENTS IN THE RECEIVERSHIP ESTATE.**

63.      The Amended Receiver Order states that the Receiver shall not destroy any documents or records of Silver Birch without further order of this Court. See Amended Receiver Order, DN 78, paragraph 9.

64.     In the course of his investigation and the prosecution of the Alterna Litigation, the Receiver has obtained documents that span tens of thousands of pages.  Many of these documents are stored with a third-party document manager, which charges a monthly fee for storage.

65.     The purposes of the receivership have been accomplished.  The Receivership Entities do not operate.  Under these circumstances, it may make sense to destroy the documents related to the receivership rather than pay a monthly fee to maintain them.

{01134983.1}                                      18

66.     The Receiver requests that this Court enter an Order that gives the Receiver the discretion to destroy documents related to the Receivership Entities. See Proposed Order, Exhibit 4.

## V.     THE RECEIVER SHOULD BE DISCHARGED

67.     The discharge of a Receiver is ordinarily a matter of discretion for the District Court. *Jones v. Proctorville*, 290 F.2d 49, 50 (6th Cir. 1961); *United States v. Amodeo*, 44 F.3d 141, 146 (2d Cir. 1995). A receiver may only be discharged by order of the appointing court. Fed.R.Civ.P. 66 (no action in which a receiver has been appointed may be dismissed absent the order of the appointing court); *see also* 12 *Business Organizations with Tax Planning* § 155.05.

68.     As set forth above, the Receiver has fulfilled his duties under the Receiver Orders. The purposes of the Receivership Estate have been accomplished. As a result, the Receiver should be discharged.

69.     The Amended Receiver Order states, "Receiver and its Professionals shall have no personal liability, whether arising out of or related to events occurring prior to or after entry of this Receiver Order or otherwise, and they shall have no claim asserted against them relating to Receiver's duties, except for claims due to their gross negligence or willful misconduct as determined in a final, non-appealable order of a court of competent jurisdiction." See Amended Receiver Order, DN 78, paragraph 17.

70.    The Amended Receiver Order further states, "The Receiver shall not be liable for any contract, lease, claim, obligation, liability, action, cost or expense of any Receivership Entity arising out of or related to events occurring prior to entry of this Receiver Order." See Amended Receiver Order, DN 78, paragraph 18.

71.    As set forth above, the Receiver has acted diligently and fulfilled his responsibilities under the Receiver Orders.  No claims for gross negligence or willful misconduct have been asserted against the Receiver or his Professionals.

72.    The Receiver respectfully requests that he and his Professionals be discharged from any other duties or responsibilities related to the Receivership.  The Receiver further requests that this Court bar any claims against the Receiver and/or his Professionals related to this Receivership and/or the Receivership Estate as set forth in the Proposed Order.  See Proposed Order, Exhibit 4.

## SERVICE

73.    The Receiver will serve this Motion both in the normal course through electronic service, and also via first class mail to any creditors of the Receivership Entities known to the Receiver which have not appeared in this case.  The Receiver will also serve this Motion on the IRS.  The Receiver will file a proof of service in the normal course.

{01134983.1}                                    20

**WHEREFORE**, the Receiver respectfully requests that this Honorable Court grant this Motion and enter the Proposed Order attached as Exhibit 4.

Respectfully submitted,

SCHAFER AND WEINER, PLLC

/ s / Joseph K. Grekin
DANIEL J. WEINER (P32010)
HOWARD BORIN (P51959)
JOSEPH K. GREKIN (P52165)
Attorneys for Receiver
40950 Woodward Ave., Ste. 100
Bloomfield Hills, Michigan 48304
(248) 540-3340
jgrekin@schaferandweiner.com

Dated:  June 11, 2026

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

PATHWARD, NATIONAL
ASSOCIATION

         Plaintiff,

v.

SILVER BIRCH SYSTEMS LLC; and
DANIEL T. OSHATZ, individually.

         Defendants.

_____/

Case No. 22-CV-10092- BAF-APP

Hon. Mark A. Goldsmith

## BRIEF IN SUPPORT OF RECEIVER'S MOTION TO RE-OPEN CASE, TERMINATE RECEIVERSHIP, AND DISCHARGE RECEIVER

Scott Eisenberg (the "Receiver"), by his counsel Schafer and Weiner, PLLC, moves for this Court to Enter an Order Granting the Receiver's *Motion to Re-Open Case, Terminate Receivership and Discharge Receiver.*  The Receiver relies on the facts and law which are contained in the Motion.

**WHEREFORE**, the Receiver respectfully requests that this Honorable Court enter the Order attached to his Motion as Exhibit 4.

[Signature continued on next page]

{01173918.1}

Respectfully submitted,

SCHAFER AND WEINER, PLLC

/ s / Joseph K. Grekin
DANIEL J. WEINER (P32010)
HOWARD BORIN (P51959)
JOSEPH K. GREKIN (P52165)
Attorneys for Receiver
40950 Woodward Ave., Ste. 100
Bloomfield Hills, Michigan 48304
(248) 540-3340
jgrekin@schaferandweiner.com

Dated: June 11, 2026

{01173918.1}

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PATHWARD, NATIONAL
ASSOCIATION

      Plaintiff,

v.

SILVER BIRCH SYSTEMS LLC; and
DANIEL T. OSHATZ, individually.

      Defendants.

_____/

Case No. 22-CV-10092- BAF-APP

Hon. Mark A. Goldsmith

## **PROOF OF SERVICE**

I hereby certify that on June 11, 2026, I filed ***Receiver's Motion to Re-Open Case, Terminate Receivership, and Discharge Receiver*** with the Court using the ECF system, which will send notification of such filing to all counsel currently included on the Court's Electronic Mail Notice List, and I served a copy of the same upon the parties below via first class mail:

Spartan Business Solutions – 371 E. Main St., Ste. 2, Middletown, NY 10940

C6 Capital – 441 Lexington Ave., 18th Floor, New York, NY 10017

Delta Bridge Funding, LLC – 400 Rella Blvd., Ste. 165,-101 – Suffern, NY 10901

NewCo Capital Group, LLC – 90 Broad St., Suite 903, New York, NY 10004

{01174109.1}

ACH Capital UT, LLC – 90 Broad Street, 16th Floor, New York, NY 10004

Internal Revenue Service - Office of Chief Counsel, 1111 Constitutional Ave., NW Washington, DC 20224

Internal Revenue Service - Central Insolvency Operations, P O Box 7346 Philadelphia, PA 19101

---

/s/ Pamela Jozwiak, Legal Assistant to
JOSEPH K. GREKIN (P52165)
Schafer and Weiner, PLLC
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI 48304
Telephone: (248) 540-3340
**COUNSEL FOR RECEIVER**

{01174109.1}